Minute Order Form (06/97)

JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 604 | **DATE** | 3/14/2001 |
| **CASE TITLE** | LEONARD G. LEVINE vs. DANIEL LEVINSON, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion for summary judgment is granted [9-1] and Plaintiff's motion for summary judgment is denied [13-1]. Judgment is entered in favor of defendants. The captioned case is hereby ordered terminated upon the docket record of the U.S.District Court for the Northern District of Illinois Eastern Division.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 15 2001 | |
| | Notified counsel by telephone. | | date docketed | 25 |
| ✓ | Docketing to mail notices. | | C.S. | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 1 5 2001

| | |
|---|---|
| LEONARD G. LEVINE, not individually, but on behalf of Banyan Strategic Realty Trust,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL LEVINSON, STEPHEN PECK, L.G. SCHAFRAN and BANYAN STRATEGIC REALTY TRUST,<br><br>Defendants. | No. 01 C 604<br>Judge Ronald A. Guzman |

## MEMORANDUM OPINION AND ORDER

Pending are cross motions for summary judgment pursuant to Fed. R. Civ. Proc. 56. For the reasons set forth below Defendants cross motion for summary judgment is hereby granted (#9) and Plaintiff's motion for summary judgment denied (#13).

## BACKGROUND FACTS

On January 19, 2001, Plaintiff Leonard G. Levine ("Levine"), a shareholder and former president of the Banyan Strategic Realty Trust ("Banyan") filed this shareholder derivative action in the Circuit Court of Cook County, Illinois seeking to enjoin a $226 million transaction. The Transaction, a sale of the Trust's real estate assets to Denholtz Management Corporation (the "Denholtz Transaction"), was authorized and approved by the Trustees on January 5, 2001,

1

pursuant to a previously adopted plan to terminate and liquidate the Trust and to distribute to the Trust's shareholders the net proceeds from the sale of the Trust's assets. On January 8, 2001, L.G. Schafran as interim president of the Trust executed the Denholtz contract in accordance with the authorization and direction given to him by the Trustees. At meetings held on February 29, March 13 and July 20, 2000 Levine submitted proposals to acquire all of the business and assets of the Trust. For reasons not set forth in the record Banyan rejected Levine's offers and accepted Denholtz'. The Denholtz transaction is set to close April 30, 2001.

The Trust is a Massachusetts business trust with four Trustees, three of the Trustee Defendants. The Trust's shares are publicly traded on the NASDAQ, and the Trust has more than three thousand shareholders. Levine, the currently suspended President of the Trust, is a former trustee. The powers and duties of the Trustees are defined in the Third Amended and Restated Declaration of Trust of Banyan Strategic Really Trust (the "Declaration of Trust").

On January 5, 2001, the four Trustees authorized the Trust to enter into an agreement (the "Purchase Agreement") to sell substantially all the Trust's real estate assets to Denholtz for approximately $226 million. This Purchase Agreement was entered into pursuant to a January 5, 2001 Plan of Termination and Liquidation, under which the net proceeds realized from the liquidation of the Trust's assets will be distributed to the shareholders. The Trustees did not seek shareholder approval of the Denholtz transaction based upon counsel's advice that shareholder approval was not required of any proposed sale of the assets of the trust. The attorneys are not alone. Levine himself has represented to the Trustees on three occasions when he attempted to purchase the assets that the Trust has agreed to sell to Denholtz that a sale of all of the Trust's assets pursuant to a plan of liquidation does not require shareholder approval.

## DISCUSSION

Summary judgment is appropriate if the pleadings, answers to interrogatories, admission, affidavits and other materials show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2502, 2510, 91 L. Ed.2d 202 (1986). The party seeking summary judgment carries the initial burden of showing that no such issue of material facts exists. Pursuant to Rule 56(b), when a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issued of material fact and that the moving party is not entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 250.

In making our determination, we are to draw inferences from the record in a light most favorable to the non-moving party. We are not required to draw every conceivable inference, but only those that are reasonable. *See DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F. 2d 326, 329 (7th Cir. 1987). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, the party must go beyond the pleadings and support his contentions with proper documentary evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's cause of action. *See Celotex*, 477 U.S. at 422.

For cross-motions for summary judgment, each movant must individually fulfill the

3

stringent requirements necessary to obtain summary judgment under Rule 56, such standards still being applicable. *United v. Ill. Central R.R.*, 998 F. supp. 874, 880 (N.D. Ill. 1998). By filing cross-motions for summary judgment the parties do not waive trial, unless the judge disagrees. *Miller v. LeSea Broadcasting, Inc.*, 87 F. 3d 224, 230 (7th Cir. 1996). Indeed upon cross motions for summary judgment, the court is not required to grant summary judgment as a matter of law for either side. *Brownlee v. City of Chicago*, 983 F. Supp. at 779. With these principles in mind, we turn to the merits of the motions.

Levine now contends that the Declaration of Trust requires the Trustees to seek shareholder approval for the Denholtz transactions pursuant to Sections 7.7 and 9.2 of the Declaration of Trust. These sections of the trust provide in whole or in part the following:

> **Section 7.7 <u>Shareholders' Meetings and Consents.</u>**
>
> ...[n]otwithstanding this or any other provision of this Declaration, no vote or consent of Shareholders shall be required to approve the sale, exchange or other disposition, pledging, hypothecating, granting security interest in, mortgaging, encumbering or leasing by the Trustees of less than half of the assets of the Trust or upon the liquidation and dissolution of the Trust in the ordinary course.
>
> **Section 9.2 <u>Merger, etc.</u>** Upon the vote or written consent of a majority of the Trustees, and with the approval of Shareholders holding or having the right to vote two-thirds of the Shares then outstanding, at a meeting the notice for which includes a statement of the proposed action, the Trustees may (a) merge the Trust into, or sell, convey and transfer the Trust Estate to, any corporation, association, trust, or other organization, which may or may not be a subsidiary of the Trust, in exchange for shares or securities thereof, or beneficial interests therein, or other consideration, and the assumption by such transferee of the liabilities of the Trust and (b) thereupon terminate the Trust and, subject to this Section 9 and in compliance with the designations of any Preferred Shares, distribute such shares, securities, beneficial interests or other consideration ratably among the Shareholders in redemption of their Shares; provided, however, that: (i) the Shareholders would, thereafter, be the sole equity owners of such entity; and (ii) such entity and the Shareholders would thereafter be subject to federal income tax in much the same manner as they were so long as the Trust qualified as a REIT.

Plaintiff contends that the Trustees under either or both sections have an obligation to seek shareholder approval for the Denholtz transaction. Defendants, on the other hand, claim that Section 9.1, entitled "Duration and Termination of the Trust" unmistakably grants the Trustees complete power to terminate the Trust, to liquidate its assets, and to distribute the net proceeds to the shareholders without shareholder approval. Section 9.1 provides the following:

> **9.1 <u>Duration and Termination of Trust.</u>** The duration of the Trust shall be perpetual unless a majority of the Trustees shall determine that the Trust should be terminated and liquidated. Any determination by the Trustees of the date upon which termination shall occur shall be reflected in a vote of or written instrument signed by a majority of all of the Trustees then in office, including a majority of the Independent Trustees; provided that the Trust shall be subject to termination at any time by the vote or consent of Shareholders holding or having the right to vote a majority of the outstanding Shares entitled to vote thereon.
>
> **9.1.1 Upon termination of the Trust;**
>
> a.  the Trust shall carry on no business except for the purpose of winding up its affairs;
> b.  the Trustees shall proceed to wind up the affairs of the Trust and all of the powers of the Trustees under this Declaration shall continue until all of the affairs of the Trust shall have been wound up, including the power to fulfill or discharge the contracts of the Trust, collect its assets, sell, convey, assign, exchange, transfer, or otherwise dispose of all or any part of the remaining Trust Estate to one or more persons at public or private sale for consideration which may consist in whole or in part of cash, securities or other property of any kind, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business (and provided that the Trustees may, if permitted by applicable law, and if they deem it to be in the best interests of the Shareholders, appoint a liquidating Trustee or agent or other entity to perform one or more of the foregoing functions); and
> c.  after paying or adequately providing for the payment of all liabilities, and upon receipt of such releases, indemnities and refunding agreements, as they deem necessary for their protection, and after payment in full of the liquidation preferences to holder of any Preferred Shares, the Trustees or any liquidating trust, agent or other entity appointed by them,

shall distribute the remaining Trust Estate among the Shareholders, pro rata, according to the number of Shares held by each.

If any plan for the termination of the Trust approved by Shareholders holding or having the right to vote two-thirds of the outstanding Shares and agreeable to a majority of the Trustees provides for actions of the Trustees other than as aforesaid, the Trustees shall have full authority to take all actions as in their opinion is necessary or appropriate to implement such plan.

The Trust Declaration is interpreted like any other contract. *Goldin v. Bartholow*, 166 F. 3d 710, 715 (5th Cir. 1999); *In re Halas*, 470 N.E. 2d 960, 964 (Ill. 1984); *Raine v. CBS, Inc.*, 25 F. Supp. 2d 434, 443 (S.D.N.Y.1998). It is governed and construed under Massachusetts law. *Trust Dec.* § 10.1. Massachusetts courts construe the words of a contract in their usual and ordinary sense. *Edwin R. Sage Co. v. Foley*, 421 N.E.2d 460, 465 (Mass. App. Ct. 1981); *see also Fairfield 274-278 Clarendon Trust v. Dwek*, 970 F. 2d 990 (1st cir. 1992).

It is well settled that the powers and shareholders of a Massachuset's business trust are defined entirely by the Declaration of Trust. *See, e.g. Koenig v. Johnson*, 163 P. 2d 746, 751 (Cal. Dist. Ct. App. 1945)("[T]he nature of a [Massachuset business] trust as a business organization is to be determined from the terms of the trust instrument." (*citing Helvering v. Coleman-Gilbert Assocs.*, 296 U.S. 369 (1935)); *Todd v. Ford*, 21 P. 2d 173, 177 (Colo. 1933).("[T]he rights and liabilities of all the parties of the [Massachuset business] trust, unit holders and trustees alike, must rest on the provisions of the declaration of trust."); 13 AmJur2d, Business Trusts, § 31, p. 263 (2000)("The provisions of the declaration of trust are binding upon the shareholder of a [Massachusetts business] trust and determine their rights."); Herbert B. Chermside, Jr., Annotation, *Modern Status of the Massachusetts or Business Trust*, 88 ALR3d 704, 729-30 (1978 & Supp. 2000)(there is a "broad principle that the indenture or declaration of

6

trust purporting to establish a Massachusetts or business trust is determinative of the nature of the organization and of the details of its operation...").

Levine's reliance on the last sentence of the first paragraph of Section 7.7 fails to raise a question of fact as to the issue of whether shareholder approval is required prior to termination or liquidation of the Trust or that the language of the Trust Declaration is ambiguous. Levine claims that the language set forth in Section 7.7 (dispensing with shareholder for the sale of less than half of Banyan assets) raises by implication that shareholder vote and consent for the sale of more than half the assets is required. A plain reading of section 7.7 reveals otherwise. As indicated above Section 7.7 explicitly states that upon liquidation and dissolution of the Trust in the ordinary course, no vote or consent of shareholders is required. To the extent that Section 7.7 could even be read to address the Trustees' adoption of a Plan of Termination and Liquidation pursuant to Section 9.1, Section 7.7 explicitly states that upon liquidation and dissolution of the Trust in the ordinary course, no vote or consent of shareholders is required. The power granted to the Trustees in Section 9.1 speaks in particular to the liquidation and dissolution of the Trust and what was contemplated in the event of such termination. Section 9.1 provides unequivocally that '[t]he duration of the trust shall be perpetual unless a majority of the Trustees shall determine that the Trust should be terminated and liquidated." It makes no reference to shareholder approval. Section 9.1 goes on to provide that upon the termination of the trust, the Trustees have the power to "sell, convey, assign, exchange, transfer or otherwise dispose of all or any part of the remaining Trust Estate to one or more persons at public or private sale..." Again, it makes no reference to shareholder approval. To read the two clauses in section 7.7 as requiring shareholder approval in liquidation situations makes no sense because liquidation involves the

termination and winding up of the business' affairs.

Furthermore, Section 9.2 of the Trust Declaration cannot be concluded to confirm that the Trustees are required to obtain shareholder approval in termination and liquidation situation. Reading this section in its entirety and not in a segmented fashion as Levine attempts to do reveals that shareholder approval is solely required in the situation where the Banyan shareholders would be the sole equity owners of such entity after the merging, selling, conveying or transferring of the Trust Estate. As Banyan points out the logic behind Section 9.2 is the same as that behind Section 7.7, *i.e*, to allow the shareholders to vote in a situation in which they could be part owners of something other than the entity in which they originally invested. As with Section 7.7, that logic does not extend to the liquidation scenario, in which the affairs of the trust are winding down. Because Banyan has withdrawn its argument with respect to Levine's alleged failure to make demand on the trustees and to adequately plead futility, we consider this argument withdrawn.

## CONCLUSION

For the reasons set forth below Defendants' motion for summary judgment is granted (#9) and Plaintiff's motion for summary judgment denied (#13). Judgment is entered in favor of Defendants. The captioned case is hereby ordered terminated upon the docket record of the United States District Court for the Northern District Eastern Division.

SO ORDERED  ENTERED: 3/14/01

HON. RONALD GUZMAN
United States Judge

8